IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ALICE CLARK, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>ROBERT WILKIN,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br><br>Case No. 2:06-CV-693 TS |

This matter is before the Court on Defendant's Motion for Partial Summary Judgment Regarding Punitive Damages. Defendant asks the Court to enter summary judgment in his favor on Plaintiffs' claim for punitive damages, arguing no reasonable jury could find that Defendant's conduct was willful and malicious or manifested knowing and reckless disregard. As set forth below, the Court will deny Defendant's Motion and strike the hearing set for June 11, 2008.

I.  STANDARD OF REVIEW

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[1] In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return

---

[1] *See* Fed. R. Civ. P. 56(c).

a verdict for the nonmoving party in the face of all the evidence presented.[2]  The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[3]

## II.  BACKGROUND

This negligence case arises from an automobile accident on April 1, 2005, at approximately 2:30 a.m. on a remote stretch of Interstate-15 near mile post 239—between Nephi and Santaquin, Utah—where the speed limit is 75 mph.  Defendant Robert Wilkin was driving a large truck and pulling an eight-foot-wide trailer that was manufactured in 1960.  David Nypower was driving a car in which Plaintiff Alice Clark occupied the passenger seat.  The car collided with the back of Defendant's trailer, killing Mr. Nypower and injuring Plaintiff Clark.  Plaintiff Clark and the heirs of Mr. Nypower brought this action against Defendant, seeking compensatory and punitive damages.

In a statement given to law enforcement officers, Defendant indicated that he was traveling between 50 and 55 mph at the time of the accident due to a mechanical problem with his truck.[4]  According to Defendant's expert, Defendant was most likely traveling at

---

[2] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[3] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[4] Docket No. 119, Ex. I.

approximately 44 mph.[5] Defendant did not have his hazard lights illuminated before the accident occurred.[6]

Shortly after the accident, but before any emergency personnel or law enforcement officers arrived, Defendant left the scene of the accident. Police found Defendant and his vehicle at a freeway exit several miles north of the accident site. According to the police report, Defendant initially denied any involvement or knowledge of the accident.[7] Only after officers discovered damage to the trailer and parts from the other car lodged in the trailer's undercarriage did Defendant admit to having knowledge of the accident.[8] Defendant was issued a citation for numerous safety violations, including an "Inoperable left trailer signal"; "Inoperable lamps. Two left side tail lamps"; and "No triple ID lights on trailer."[9]

The Parties present conflicting evidence as to how many lights were functioning on the rear of Defendant's trailer at the time of the accident. Trooper Brierly, the Utah highway patrolman who inspected Defendant's trailer and issued the citation testified that two of the three lights on the left rear were inoperable, that there was no left signal, and only one reflector.[10] In his deposition, Plaintiff's expert testified that only two of the six lights on the trailer—both the

---

[5] *Id.*, Ex. D, at 35.

[6] *Id.*, Ex. A, at 72.

[7] *Id.*, Ex. I.

[8] *Id.*

[9] *Id.*, Ex. B.

[10] Docket No. 92 Ex. C, at 27-28.

inner most tail lights—were lit at the time of the accident and that both of those lights were dim.[11] It is undisputed that the rear of the trailer had no retroreflective tape.

A little more than seven months before the accident, Defendant was issued a citation for multiple safety violations while operating his 1960 trailer in Provo, Utah. Among those violations were the following: "[m]issing lens or lighting assembly = no rear I.D.s"; "[d]efective brake lamp(s) LEFT"; and "[d]efective turn signal(s) LEFT REAR." Defendant also testified in his deposition that he "was aware" that his trailer was required to have retroreflective tape across the entire width of its rear-end.[12]

## III.  DISCUSSION

Defendant claims that he is entitled to summary judgment on Plaintiffs' punitive damages claim, arguing no reasonable jury could find that Defendant's conduct was willful or malicious or exhibited knowing and reckless disregard for the rights of others.

Claims for punitive damages in Utah are governed by Section 78-18-1 of the Utah Code. According to Subsection (1)(a),

> Except as otherwise provided by statute, punitive damages may be awarded only if compensatory or general damages are awarded and it is established by clear and convincing evidence that the acts or omissions of the tortfeasor are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others.[13]

This standard is met where the defendant knows or should know "that [his] conduct would, in a high degree of probability, result in substantial harm to another, and the conduct must be highly

---

[11] Docket No. 119, Ex. G, at 12-13.

[12] *Id.*, Ex. A, at 57.

[13] Utah Code Ann. § 78-18-1(1)(a).

4

unreasonable conduct, or an extreme departure from ordinary care, in a situation where a high degree of danger is apparent."[14]  "Simple negligence will never suffice as a basis upon which [punitive] damages may be awarded."[15]

The punitive damages standard is 'fact specific,' such that the determination as to whether punitive damages are awarded is 'within the sound discretion and province of the jury.'"[16]  However, where "reasonable minds could not differ in concluding" that the evidence does not meet this standard, "the court should eliminate the issue of punitive damages as a matter of law."[17]  In making this determination, the court "must always have in mind the purpose of such damages:"[18] "punishing and deterring outrageous and malicious conduct which is not likely to be deterred by other means."[19]

In this case, there are disputed issues of fact as to whether Defendant acted with knowing and reckless disregard for the rights of others, precluding summary judgment on Plaintiff's claim for punitive damages.  A jury could reasonably find that on the night of the accident Defendant was operating a large truck pulling a semi-trailer at approximately 30 mph below the speed limit

---

[14]*Behrens v. Raleigh Hills Hosp., Inc.*, 675 P.2d 1179, 1187 (Utah 1983) (internal quotations and citation omitted); *see also Gleave v. Denver & Rio Grande W. R.R. Co.*, 749 P.2d 660, 670-71 (Utah Ct. App. 1988) (applying factors listed in *Behrens*); *Boyette v. L.W. Looney & Son, Inc.*, 932 F. Supp. 1344, 1347 (D. Utah 1996) (same).

[15]*Behrens*, 675 P.2d at 1186.

[16]*Mark VII Fin. Corp. v. Smedley*, 792 P.2d 130, 134 (Utah Ct. App. 1990) (quoting *Johnson v. Rogers*, 763 P.2d 771 (Utah 1988) and *Biswell v. Duncan*, 742 P.2d 80, 86 (Utah Ct. App. 1987)).

[17]*Biswell*, 742 P.2d at 87.

[18]*Miskin v. Carter*, 761 P.2d 1378, 1380 (Utah 1988).

[19]*Id.* (quoting *Behrens*, 675 P.2d at 1186).

on a remote stretch of Interstate-15 at 2:30 a.m. without the necessary reflective devices on the rear of the trailer and without illuminating the trailer's hazard lights, despite his knowledge that the trailer did not have the required reflective devices and was otherwise noncompliant with federal law.  Based on these facts a jury could also reasonably find by clear and convincing evidence that Defendant acted with knowing and reckless disregard for the rights of others.

Part 393 of the Federal Motor Carrier Safety Regulations, found in Chapter III of Title 49, governs the parts and accessories required on a "commercial motor vehicle,"[20] including vehicle lighting, reflective devices, electrical equipment, brakes, windows, fuel systems, etc. The regulations at issue in this case concern lighting and reflective devices.

Section 393.11 outlines the requirements for "lighting devices" and reflectors "by type of commercial motor vehicle."[21]  However, this section also clarifies that "[m]otor vehicles placed in operation on or before March 7, 1989, must meet either the requirements of [the Federal Motor Carrier Safety Regulations] or part 571 of this title in effect at the time of manufacture."[22]  Thus, the lighting requirements for Defendant's Williamsen trailer are governed by the regulations in force at the time of its manufacture—1960.

In 1960, the regulations governing Defendant's trailer were found in Chapter I Part 193 of Title 49, a predecessor of current Part 393.[23]  At that time, 49 C.F.R. § 193.14 required that

---

[20]The Parties both assume in their respective memoranda that Defendant's trailer is a "commercial motor vehicle" for purposes of the regulations under Part 393.

[21]49 C.F.R. § 393.11 (2004).

[22]*Id.*

[23]The Federal Motor Vehicle Safety Standards, found in Part 571 of Title 49, first came into existence in 1967 as Part 255 of Title 23.  32 Fed. Reg. 2408, 2408-09, 2411-13 (Feb. 3, 1967).

6

"[e]very semi-trailer or full trailer 80 inches or more in overall width" have on its rear "one red tail lamp; one red or amber stop lamp; two red clearance lamps, one at each side; [and] two red reflectors, one at each side."[24]  The 1960 Motor Carrier Safety Regulations did not require rear triple identification lights.  The requirement that trailers more than 80 inches wide have rear triple identification lights was first imposed in a 1960 regulation that did not become effective until July 1, 1961.[25]

Although the general requirements for lighting and reflective devices for Defendant's trailer are governed by the regulations in effect in 1960, 49 C.F.R. § 393.13 requires that "[a]ll trailers and semi-trailers manufactured prior to December 1, 1993, which have an overall width of [80 inches] or more and a gross vehicle weight rating of [10,001 pounds] or more . . . must be equipped with retroreflective sheeting or an array of reflex reflectors that meet the requirements of [that] section."[26]  Section 393.13 requires that the rear of the trailer have either retroreflective sheeting extending horizontally across the entire rear width of the trailer and in both the upper-left and upper-right corners or an array of reflex reflectors, each not more than 4 inches apart, in the same pattern.[27]

A jury could reasonably find that Defendant's trailer was not compliant with federal regulations for lighting and reflective devices.  It is undisputed that Defendant's trailer did not have the required retroreflective tape or array of reflex reflectors on its rear-end.  Additionally,

---

[24] 17 Fed. Reg. 4423, 4432 (May 15, 1952).

[25] 25 Fed. Reg. 9837, 9839, 9845 (Oct. 14, 1960).

[26] 49 C.F.R. § 393.13(a) (2004).

[27] *Id.* at § 393.13(b)-(d).

Trooper Brierly testified that Defendant's trailer was missing one of the required reflectors on the left side of its rear.

A jury could also reasonably find that Defendant was aware of the requirements for lighting and reflective devices. As per his deposition testimony, and the August 2004 citation, Defendant was clearly aware that his trailer was subject to federal regulations concerning proper lighting and reflective devices. More important, Defendant specifically testified that he was aware of the retroreflective tape requirements.

Finally, a jury could reasonably find that Defendant chose to operate his trailer without proper reflective devices at speeds of approximately 30 mph below the 75 mph speed limit on a remote stretch of Interstate-15 at 2:30 a.m. without flashing his hazard lights. Defendant's expert testified that Defendant was traveling at approximately 44 mph. Defendant has admitted that he did not illuminate his hazard lights.

Based on the forgoing, a jury could reasonably find that Defendant knew or should have known that his decision to operate the truck and trailer on the night of the accident was highly unreasonable and was highly likely to result in substantial harm to another. Accordingly, there are disputed issues of material fact as to whether Defendant acted with knowing and reckless disregard for the rights of others. The Court will, therefore, deny Defendant's Motion for Partial Summary Judgment on the issue of punitive damages.

Further, the Court notes that Plaintiff has carefully outlined Defendant's alleged post-accident conduct in fleeing the scene of the accident and then lying to law enforcement officers about his involvement. Defendant argues that this evidence is irrelevant and should be disregarded for purposes of Defendant's Motion.

As recently clarified by the Tenth Circuit in *Sims v. Great American Life Insurance Co*,[28] whether evidence in a diversity case is relevant and, therefore, admissible is governed by Federal Rule of Evidence 401.[29]  However, the relevancy determination under Rule 401 is guided, in part, by substantive state policy.[30]  According to Rule 401, "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[31]

> This definition requires a dual inquiry: (1) whether the evidence is *probative* or factually relevant to the proposition asserted (*i.e.*, whether the evidence tends to make the existence of that fact more or less probable), and (2) whether the proposition for which the evidence is offered is *properly* provable in the case (*i.e.*, the fact is material—of consequence—to the question of state law).  The first inquiry is a procedural question of evidence law and the second is a substantive question regarding the materiality of the evidence.[32]

Under the second inquiry, "a fact may be 'of consequence' in a diversity action only if substantive state policy so allows."[33]

The Parties have not cited—nor has the Court's research yielded—any substantive Utah law on whether evidence of post-accident conduct may be "of consequence" to the determination

---

[28] 469 F.3d 870 (10th Cir. 2006).

[29] *Id.* at 880-82.

[30] *Id.* at 881-82.

[31] Of course, "[t]he standard is not stringent; it is aimed at each 'brick' of evidence potentially making a wall and not every witness 'mak[ing] a home run.'" *United States v. Yazzie*, 188 F.3d 1178, 1189 (10th Cir. 1999) (quoting Fed. R. Evid. 401 advisory committee's note).

[32] *Sims*, 469 F.3d at 881 (footnote and citations omitted).

[33] *Id.* at 881.

of a punitive damages claim arising from an automobile accident.[34] Although evidence of flight by itself is not enough to support a claim for punitive damages,[35] "it is generally held that evidence of the failure of an operator of the vehicle to stop and render aid after the accident, *in connection with other evidence*, may be considered by the jury in assessing punitive damages."[36] The Court finds that the Utah Supreme Court would adopt this rule.[37]

---

[34] Although Defendant points to the case of *Fisher v. Trapp*, 748 P.2d 204 (Utah Ct. App. 1988), that case is not helpful to the question before the Court. In *Trapp*, the Utah Court of Appeals upheld a trial court's exclusion of flight evidence on the issue of negligence where the potential prejudice of the evidence outweighed its probative value. *Id.* at 206-07. Contrary to Defendant's contentions, the *Trapp* court did not hold that flight evidence could never be relevant to the issue of negligence in an automobile accident, but rather that the trial court in that case did not err in excluding the evidence based on its potential for prejudice. More important, the *Trapp* court did not consider whether post-accident conduct may be relevant to a claim for punitive damages.

[35] *See Freeman v. Anderson*, 651 S.W.2d 450, 452-53 (Ark. 1983) (upholding exclusion of "evidence that the appellee left the scene of the accident as a basis for an award of punitive damages" in the absence of other circumstances indicating "*conscious* indifference").

[36] *Forquer v. Pinal County*, 526 P.2d 1064, 1067-68 (Ariz. Ct. App. 1974) (emphasis added); *see also Jones v. Cruzan*, 33 P.3d 1262, 1264 (Col. Ct. App. 2001) (upholding admission of evidence that defendant fled scene of accident on issue of punitive damages); 17 Am. Jur. Proof of Facts § 311 ("The rule seems to be that failure to stop after an accident is not of itself evidence sufficient to support punitive damages, but along with all the accompanying facts and circumstances of the accident may be used to show that that portion of the defendant's conduct that constituted the proximate cause of the accident was willful and wanton or grossly negligent.").

[37] *Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002) ("When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court, and, if no such rulings exist, must endeavor to predict how that high court would rule."). The result would be the same if federal law were applied. The Tenth Circuit, applying Federal Rules of Evidence 401, 402, 403, and 404(b), has upheld the admissibility of post-accident conduct for purposes of determining the defendant's state of mind prior to and at the time of an automobile accident. *Bergeson v. Dilworth*, 959 F.2d 245, at *3-4 (10th Cir. 1992) (unpublished decision).

Applying this rule in the context of Rule 401, Defendant's post-accident conduct, particularly his fleeing the scene of a serious accident in which he was involved and subsequently telling law enforcement officers that he was not involved in the accident and knew nothing about it, is relevant to his state of mind on the night of the accident when viewed in connection with his decision to operate the trailer under the conditions described above. Whether any potential prejudice resulting from this evidence substantially outweighs its probative value under Federal Rule of Evidence 403 is a question "best undertaken at the trial itself."[38]  Accordingly, Defendant's post-accident conduct also weighs in favor of denying Defendant's Motion for Partial Summary Judgment.

### III.  CONCLUSION

For the reasons discussed above, it is hereby

ORDERED that Defendant's Motion for Partial Summary Judgment Regarding Punitive Damages [Docket No. 91] is DENIED and the June 11, 2008 hearing is stricken.

DATED June 10, 2008.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[38] *See Adams v. Ameritech Servs., Inc.*, 231 F.3d 414, 428 (7th Cir. 2001).  "[W]hile it is not unheard of to exclude evidence under Rule 403 at the summary judgment stage, normally the balancing process contemplated by that rule is best undertaken at the trial itself." *Id.* (citation omitted).